F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**MAR 15 2005**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARTIN JAY AUNE,

    Defendant-Appellant.

No. 04-8040
(District of Wyoming)
(D.C. No. 03-CR-254-J)

**ORDER AND JUDGMENT**\*

Before **EBEL**, **MURPHY**, and **McCONNELL**, Circuit Judges.

After examining the briefs and the appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is, therefore, ordered submitted without oral argument.

---

\*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.    INTRODUCTION

Defendant-appellant Martin Jay Aune pleaded guilty to being a felon in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The district court sentenced Aune to eighteen months' imprisonment, three years' supervised release, and a special assessment of $100.  Aune contends that the district court erred in finding that he did not qualify for a reduced offense level under the so-called "sporting exception" contained in United States Sentencing Guidelines ("U.S.S.G.") § 2K2.1(b)(2).  Aune also argues that his sentence violates the Sixth Amendment as interpreted by the Supreme Court in *Blakely v. Washington*, 124 S. Ct. 2531 (2004).  We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and **affirm**.

## II.    BACKGROUND

On May 6, 2003, a search warrant was executed at Aune's residence in Gillette, Wyoming.  During the search, law enforcement officers located a door in the downstairs part of the house which was blocked by a couch.  Behind the door, officers found empty firearm cases and a safe.  Aune opened the safe.  Inside the safe were six firearms: (1) a Ruger, Model P-90, .45 caliber semi-automatic pistol; (2) a Savage, Model 110, .270 caliber rifle; (3) a Marlin, Model 70, .22 caliber rifle; (4) an Armi Jager Laono, Model AP74, .22 caliber semi-automatic

rifle; (5) an SKS semi-automatic 7.62 caliber rifle; and (6) a Savage, Model 587, .22 caliber semi-automatic rifle.

In April 2003, a few weeks before the search warrant was executed, a man named David McCune stayed at Aune's residence. McCune was later interviewed by law enforcement officials and stated that Aune had displayed for McCune a pistol from the locked room. McCune further stated that he asked why Aune, a convicted felon, had the pistol and, according to McCune, Aune said that he was not worried about being caught with the firearms because the weapons were in the hidden room. McCune also told law enforcement officials that on a different occasion Aune showed another person a firearm with a scope on it.

At the sentencing hearing, Aune testified that he possessed each of the firearms identified above. Aune testified that the three .22 caliber rifles belonged to his children, ages 10, 8, and 3. Aune said he had approximately a thousand rounds of ammunition for the .22 caliber rifles so that his children could practice shooting at targets. He testified that he used the .270 caliber bolt-action hunting rifle to shoot targets and to hunt, and that he had about twenty rounds of ammunition for the weapon. Aune stated that he took this rifle hunting in 1995 and in 2000 used it at a target range. Aune claimed that the SKS rifle belonged to a friend of his who had given it to Aune for cleaning. He further testified that the SKS came with approximately sixty rounds of ammunition that were included in

the clips to be cleaned. Aune acknowledged that he did not consider the SKS rifle to be a hunting rifle. Aune also admitted to possessing the .45 caliber handgun for which he had approximately twenty rounds of ammunition. Aune stated that the .45 caliber handgun was primarily for his girlfriend's protection, but that it was also for hunting, namely for putting a wounded animal out of its misery. Aune, however, could not recall a specific occasion when he used the .45 caliber handgun to put an animal out of its misery or that he ever took the firearm hunting.

Aune further acknowledged that all the weapons were in a gun safe in a locked closet with a couch placed directly in front of the closet door. He testified that he kept the guns this way so that his children could not access the weapons. Aune denied that the events described by McCune occurred, saying he did not "know how [McCune] gathered that information" and that he did not possess a rifle with a scope. Aune also acknowledged that he had been convicted of a felony in 1986. He testified that he believed that five years after his conviction, his civil rights were restored, including the right to possess firearms.

The only other person to testify at the sentencing hearing was Steven Stensland, who testified that it was his SKS rifle found in Aune's gun safe and that he had given it to Aune to clean. He testified that he had purchased the SKS rifle at a gun show in Gillette approximately two years before the hearing and that

he had taken the rifle hunting. Stensland described himself as a gun collector and estimated that he owned approximately twenty-seven or twenty-eight guns. Stensland further testified that he had made no attempt to retrieve the SKS rifle from law enforcement.

The district court concluded that Aune did not qualify under the "sporting exception" in § 2K2.1(b)(2) because he did not possess all the weapons solely for "lawful sporting purposes." Based on Aune's criminal history category III and an adjusted base offense level of thirteen[1], the district court sentenced Aune to eighteen months' imprisonment followed by a three-year term of supervised release. Aune filed a timely notice of appeal and now challenges his sentence.

## III. DISCUSSION

### A. Sporting Exception

Aune argues that the district court erred in finding that he did not qualify for a reduced offense level under the "sporting exception" contained in U.S.S.G. § 2K2.1(b)(2). Section 2K2.1(b)(2) states in relevant part:

> If the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully

---

[1]This adjusted base offense level was calculated as follows: the base offense level of fourteen under U.S.S.G. § 2K2.1(a)(6)(A) was adjusted upward two levels as directed by § 2K2.1(b)(1)(A) for the number of firearms possessed and then reduced by three levels for acceptance of responsibility pursuant to § 3E1.1(a) and (b). This adjusted base offense level and Aune's criminal history category resulted in Guidelines range of eighteen to twenty-four months.

discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined . . . to level 6.

U.S.S.G. § 2K2.1(b)(2) (2003).[2] The application notes to § 2K2.1(b)(2) state that whether firearms are possessed for "lawful sporting purposes or collection" is "determined by the surrounding circumstances" which include "the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history (*e.g.*, prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law." U.S.S.G. § 2K2.1(b)(2), cmt. n.10.

The defendant has the burden to show that § 2K2.1(b)(2) applies. *United States v. Collins*, 313 F.3d 1251, 1254 (10th Cir. 2002). After reviewing the record, we conclude that the district court did not err in declining to reduce Aune's sentence pursuant to § 2K2.1(b)(2). Aune failed to provide any support for his assertion that the .270 caliber rifle was used for hunting and target shooting. The court also relied on Aune's admission that he possessed about a thousand rounds of hollow-point ammunition for the .22 caliber firearms allegedly for use by Aune's children. Perhaps most importantly, Aune admitted that the .45 caliber handgun had never been taken hunting and that it was for his girlfriend's

---

[2]Because Aune was sentenced in March 2004, all citations to the Sentencing Guidelines are to the 2003 version of the United States Sentencing Commission Guidelines Manual.

protection, which is indisputably not a "sporting purpose." The court also considered the substantial number of firearms and the fact that the guns were kept in a hidden closet, which, combined with the statements by McCune, suggested to the court that Aune knew he was in violation of the law. The district court therefore did not err when it concluded that Aune was not entitled to a reduction under § 2K2.1(b)(2) because Aune failed to carry his burden to show that all the firearms were "solely for lawful sporting purposes."

**B. Sixth Amendment Claim under *Blakely v. Washington***

Aune also argues that under *Blakely v. Washington*, 124 S. Ct. 2531 (2004), his Sixth Amendment rights were violated when the district court enhanced his sentence by two levels pursuant to § 2K2.1(b)(1) because he possessed between three and seven firearms. The indictment to which Aune pleaded guilty, however, charged him with possession of six specifically identified firearms. Because the district court did not enhance Aune's sentence based on any facts not admitted by Aune regarding the number of weapons he possessed, Aune's Sixth Amendment rights were not violated.[3] *Blakely*, 124 S. Ct. at 2537 (noting that the Sixth

---

[3]Aune does not argue that the district court's factual findings related to his qualification under the "sporting exception" violated his Sixth Amendment rights. Furthermore, because Aune does not assert that the district court erred under *United States v. Booker*, 125 S. Ct. 738 (2005), we need not consider its application to his appeal.

-7-

Amendment is implicated when a sentence is imposed on facts not found by a jury or admitted by the defendant).

## IV.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentence imposed by the district court.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge